# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEROME BOWERS, #265564 | * |
| | * |
| v. | *  Civil Action Case No. CCB-11-634 |
| WARDEN JOSEPH P. MORGAN & THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * |
| | * |
| | * |

***

## MEMORANDUM

Pending is Jerome Bowers' ("Bowers") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Respondents, by their counsel, have filed a response, (Def.'s Resp., ECF No. 9), to which Bowers has replied, (Pet.'s Reply, ECF No. 10, at 12). After consideration of the pleadings, exhibits, and applicable law, the court finds a hearing is unnecessary to resolve this matter. *See* Local Rule 105.6 (D. Md. 2011); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts." The motion will be denied.

## BACKGROUND

Bowers, who is self-represented, is challenging his 2006 conviction in the Circuit Court for Washington County, Maryland for assault, reckless endangerment, and use of a deadly weapon.

### I.  Trial

The facts adduced at Bowers' jury trial in the Circuit Court for Washington County are summarized as follows. On June 14, 2005, William Anderson ("Anderson"), an inmate at the Maryland Correctional Training Center in Washington County was stabbed in the "rec room" of

Housing Unit 7. (Ex. 2 at 27, 34- 36, 105.)[1]  A homemade knife, described as a "shank," was found behind a television in the same room. (*See id*. at 43-45, 73-74.) Anderson, who lived on the same tier as Bowers, identified Bowers from a photograph as the person who stabbed him. (*See id*. at 55-58, 106, 146.)  Anderson knew Bowers only as "Fat Man." (*Id.* at 56, 106.) Anderson signed a written statement, which the prosecutor described at trial:

> The victim says he was on the top of the 7-A tier at around 1:05 p.m. and he said he was attacked by a "dark skinned heavy-set guy with long hair." "He struck me twice in the back with a pointed object." "And then I grabbed for it" and he started to grab him in the chest. "And I knew the guy's name to be 'Fat Man.'"

(*Id*. at 58, 147.) The shank used to assault Anderson was processed for fingerprints and submitted for DNA analysis. (*See id*. at 65-68.) Bowers' DNA was found under tape that was wrapped around the handle of the shank. (*See id*. at 87, 96.) Unknown DNA was also found on the shank. (*See id.* at 87-90.)

Anderson did not testify in the State's case. In the defense case, Anderson testified that he was "not a hundred percent sure" that Bowers was the person who stabbed him. (*Id*. at 101, 106-11.)[2]  When asked whether Bowers inflicted the puncture wounds Anderson sustained during the attack, Anderson testified "[n]ot to my knowledge." (*Id.* at 101.) Anderson testified that he had been transferred between institutions for his protection. (*Id*. at 102-03.) Anderson

---

[1] All exhibits referenced were filed by respondents and are docketed at ECF No. 9. Bowers did not file any exhibits.
[2] In its decision affirming Bowers' conviction, the Court of Special Appeals of Maryland said of Anderson's testimony:

> To say that he recanted his earlier statements to investigators would be an overstatement; however, to say that he did not equivocate would be a gross understatement. Anderson testified that, to his knowledge, Bowers did not "do the puncture wounds." On cross-examination, Anderson explained that after the stabbing he was moved . . . for his protection . . . [and] agreed that it was frightening for an inmate to testify against another inmate.

(Ex. 6 at 4.)

acknowledged that he was serving a lesser sentence because his "wife cooperated with the State." (*Id*. at 109.)

Bowers testified at trial that he did not stab Anderson. (*Id*. at 118.) The jury convicted Bowers of second-degree assault, reckless endangerment, and carrying a concealed deadly weapon. (*Id*. at 160-62.) He was sentenced to serve six years in prison consecutive to the sentence he was then serving. (*Id*. at 168.)

**II.     Appeal**

Bowers raised two issues on appeal to the Court of Special Appeals of Maryland: 1) whether the trial court erred in failing to grant a mistrial; and 2) whether the evidence was legally insufficient to sustain his convictions. (Ex. 3 at 2; *see also* Ex. 4 at 1-2; Ex. 6 at 1.) By unreported opinion filed on September 18, 2008, the Court of Special Appeals affirmed Bowers' convictions. (Ex. 6.) On December 30, 2008, the Court of Appeals denied certiorari. (Ex. 8.)

**III.    Post-Conviction**

On March 10, 2009, Bowers filed a petition for post-conviction relief in the Circuit Court for Washington County and raised these allegations of error:

    (A) the prosecution withheld exculpatory evidence;
    (B) the trial court improperly admitted hearsay evidence;
    (C) appellate counsel was ineffective for failing to raise on appeal that the trial
       court improperly admitted hearsay evidence;
    (D) trial counsel was ineffective for:
      (1) failing to strike a juror;
      (2) failing to request a ruling on the motion for mistrial;
      (3) failing to subpoena or call alibi witnesses; and
      (4) failing to investigate Anderson prior to calling him as a witness; and
    (E) the State's expert testified beyond her qualifications.

(*See* Exs. 9, 10). The Circuit Court held a hearing on Bowers' post-conviction petition on December 22, 2009. Bowers and his trial counsel, Stephen Musselman, testified during the

hearing. (Ex. 11 at 10-48, 63-82.) By Memorandum Opinion dated January 28, 2010, the court denied Bowers' petition on all grounds. (Ex. 12.)

Subsequently, Bowers filed an application for leave to appeal the denial of his post-conviction petition, raising the following claims:

(A) the trial court violated his right to confrontation;
(B) the trial court improperly admitted hearsay;
(C) the prosecutor committed misconduct by suborning perjury;
(D) trial counsel was ineffective for:
   (1) failing to subpoena or call alibi witnesses,
   (2) failing to investigate Anderson prior to calling him as a witness, and
   (3) failing to move to strike a juror;
(E) the State's expert testified beyond her qualifications;
(F) the post-conviction court made clearly erroneous factual findings with respect to his *Brady* claim;
(G) the prosecutor committed misconduct; and
(H) the post-conviction court failed to evaluate his ineffective assistance of counsel claims cumulatively.

(*See* Ex. 13.) By unreported opinion filed on July 8, 2011, the Court of Special Appeals summarily denied leave to appeal. (Ex. 14.)

## CLAIMS PRESENTED

Bowers' federal petition for habeas corpus relief presents the following claims:

(A) the prosecution improperly suppressed:
   (1) evidence that another weapon was found in the recreation room on the day of the stabbing, and
   (2) impeachment evidence that Anderson and his wife were confidential informants;
(B) the trial court violated his right to confront a witness testifying against him and abridged state law by improperly admitting hearsay evidence; and
(C) trial counsel was ineffective for:
   (1) introducing incriminating evidence against him,
   (2) failing to adduce an alibi defense, and
   (3) failing to strike a juror.

(*See* Petition, ECF No. 1, at 2, 9-40.)

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent

judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id.* Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (internal quotation marks and citation omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting 28 U.S.C. § 2254(e)(1)). Bowers' claims will be examined under this framework.

## DISCUSSION

### I. Improper Suppression of Evidence by Prosecution Claim

Bowers asserts that the prosecution committed a *Brady* violation[3] by failing to disclose a report that investigators found two pieces of metal inside the rec room microwave in addition to the shank used to stab Anderson. (Petition at 11-14.)[4] Bowers claims that had the information been disclosed, the defense could have argued the pieces of metal in the microwave were the weapons used to stab Anderson, not the shank. (*See id.*)

The state post-conviction court rejected the *Brady* claim because the record showed the prosecution had in fact provided the report to the defense. (Ex. 12 at 3 (stating that defense counsel Musselman "credibly testified that he received the entire DOC Criminal Investigation Report from the State," including the portion about the additional metal pieces); *see also* Ex. 11 at 64-66, 77.) Thus, there is no factual merit to the instant claim.

Under *Brady*, the prosecution is required to disclose material evidence favorable to the defendant. *See United States v. McLean*, 715 F.3d 129, 142 (4th Cir. 2013). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Curtis*, 931 F.2d 1011, 1014 (4th Cir.1991) (internal quotation marks and citation omitted). Respondents question whether the metal found in the microwave was materially relevant to the defense, noting Bowers does not allege the metal pieces were of the kind that could have been used in the stabbing. Also, trial counsel Musselman testified at the post-conviction hearing that the defense's theory of the case was that the State had the wrong person, not the wrong weapon. (Ex. 11 at 77.) For

---
[3] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[4] Another shank was discovered in the prison's Quonset huts "nowhere near" the place where the stabbing occurred. *See* Ex. 2 at 46, 50-51.)

7

these reasons, this claim fails to establish a *Brady* violation and provides no basis for federal habeas relief.

**II.     Improper Suppression of Impeachment Evidence by Prosecution Claim**

Bowers next claims the prosecution committed a *Brady* violation by failing to disclose that Anderson and his wife were confidential informants for the Washington County Narcotics Task Force. (Petition at 15-19.) Respondents request dismissal of this claim as procedurally defaulted.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971); *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46-47 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

Procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a State procedural rule, and that procedural rule provides an

independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available State remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

The state post-conviction court determined this claim waived because Bowers raised it in his motion for a new trial, but did not raise it on direct appeal to the Court of Special Appeals. (Ex. 12 at 3-8 (citing Md. Code Ann., Crim. Pro. § 7-106(b)). The state court's determination of procedural default is sufficient to preclude federal habeas review.

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Murray*, 477 U.S. at 495–96; *Breard*, 134 F.3d at 620.[5] "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted). Bowers fails to show cause and prejudice or demonstrate the need to consider the merits of this claim to prevent a fundamental miscarriage of justice.[6] (Pet.'s Reply at 3-4.) This claim is procedurally defaulted and will not be considered further.

---

[5] Bowers was granted additional time to address Respondents' affirmative defense of procedural default. (ECF No. 11.)

[6] Even if this claim were not procedurally defaulted, Bowers does not show why this information amounts to material non-disclosure necessary to establish a *Brady* violation. During Bowers' trial, Anderson testified on cross-examination by the State about his wife's role as an informant, stating the sentence he was serving was favorable because of her cooperation. (Ex. 2 at 108-09.) It is unlikely the defense wanted to impeach Anderson's veracity given his other favorable testimony for Bowers. *See* s*upra* at 2.

### III. Confrontation Clause Claim

Bowers claims the admission of Lieutenant Joseph Loman's testimony at trial violated his Sixth Amendment right to confront witnesses under *Crawford v. Washington*, which held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause of the Sixth Amendment unless the witness is unavailable for confrontation and the defendant had a prior opportunity to cross-examine the witness. 541 U.S. 36, 51-53, 68 (2004).

Lieutenant Loman, a correctional officer, testified at trial that Anderson had identified Bowers from a photo array "as the individual who assaulted him," (Ex. 2 at 55), and stated Anderson had referred to Bowers by the nickname "Fat Man," (*Id*. at 56). Anderson, who did not testify for the state, appeared as a defense witness and was questioned regarding his identification of Bowers. (*See* Ex. 2 at 100-12.) "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9.

In rejecting Bower's claim the post-conviction court wrote:

> In the case at bar, while the State did not call the victim as a witness during its case in chief, the victim was in the courtroom and was available to testify. More importantly, during the defense's case in chief, Petitioner called the victim to testify and, upon direct and redirect examination, was presented with the opportunity to examine the victim as to his identification of the Petitioner as his assailant. Because the victim testified in the instant case, he was not "unavailable" under the definition of *Crawford* and, accordingly, there is no Confrontation Clause violation.

(Ex. 12 at 9.)

Bowers relies on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), a case with materially different facts, to support his federal habeas claim. (Petition at 22; Pet.'s Reply at 5.) *Melendez-Diaz* held a forensic laboratory report was testimonial and therefore the analysts who

prepared it were subject to Sixth Amendment confrontation. *Melendez-Diaz* 557 U.S. at 311. The Court ruled that absent demonstration the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to confront the analysts at trial. *Id.*

In Bowers' case, the state court ruled that Anderson was available and in fact had testified at trial. The state post-conviction court's determination that *Crawford* afforded Bowers no relief under these facts, (*see* Ex. 12 at 8-11), was not contrary to and did not involve an unreasonable application of clearly established federal law and does not warrant federal habeas relief.

### IV. Admission of Hearsay Under State Law Claim

Bowers also alleges that Lieutenant Loman's statements about Anderson's photo identification of him violated Maryland hearsay law. (Petition at 29-34.) State laws which do not infringe on specific federal constitutional protections are not cognizable under 28 U.S.C. § 2254. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999) (when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review). Bowers' claim, based solely upon an interpretation of state law, is thus not cognizable on federal habeas review. *See id.*

### V. Ineffective Assistance of Counsel Claims

Bowers complains his trial counsel rendered constitutionally ineffective representation by: 1) failing to strike a juror, 2) failing to request a ruling on the motion for mistrial, 3) failing to subpoena or call alibi witnesses, and 4) failing to investigate Anderson prior to calling him as a witness. To establish ineffective assistance of counsel, it must be shown that: 1) counsel's

performance was deficient, and 2) the performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (internal quotation marks and citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 131 S.Ct. at 790 (internal quotation marks and citation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland,* 466 U.S. at 697. Bowers' claims of ineffective assistance of counsel will be analyzed under these standards.

### A. Introducing Evidence of Guilt

Bowers claims trial counsel was deficient for introducing "the only direct evidence actually accusing [Bowers] of assaulting the alleged victim." (Petition at 35.) Respondents assert this claim is procedurally defaulted because the "thrust" of Bowers' claim at post-conviction proceedings was that defense counsel failed to investigate Anderson. (Def.'s Resp. at 19; Ex. 11 at 8, 36 (defining the issue at the post-conviction hearing as defense counsel failed to investigate the victim prior to putting him on the stand).) Bowers did not raise the instant claim on post-conviction review; thus, it is procedurally defaulted.[7]

In any event, this claim provides no grounds for federal habeas relief. According to Bowers, when the state concluded its case-in-chief, "the state featured no witness that had personal knowledge of the Petitioner committing any crime." (Petition at 35.) Bowers adds that defense counsel "produced not only the single eyewitness" but "allowed the introduction of

---

[7] Bowers fails to set forth grounds to excuse the procedural default. *See supra* at 9.

physical evidence for the jury to consider." (*Id.*)  Bowers asserts "[b]oth of which, would not have been in evidence without counsel's unprofessional judgment neither could a conviction been reached without the testimony of the victim and the written statement." (*Id.*)

At the post-conviction hearing, trial counsel testified that he investigated Anderson and made a tactical decision to call him as a witness because his testimony would be favorable to Bowers.  (Ex. 11 at 68-71, 73-75.)  In rejecting Bower's claim, the post-conviction court stated:

> At the evidentiary hearing, Petitioner conceded that calling the victim as a defense witness on the day of trial was the only way in which to test the veracity and credibility of the statement the victim made to correctional officers regarding that incident.  However, Petitioner also contends that had trial counsel independently investigated the victim, Mr. Musselman would have discovered that the victim was serving a favorable sentence because the victim and his wife had provided information to the NTF.  Petitioner alleges that by calling the victim in his case in chief, Mr. Musselman directly introduced the only evidence supporting the State's case.
>
> At the evidentiary hearing, Mr. Musselman testified that: (1) the State provided a letter to Mr. Musselman written by the victim to the State indicating that the victim was reluctant to testify and did not wish to prosecute the Petitioner, (2) the State and Mr. Musselman exchanged various e-mails regarding the victim's reluctance to testify, (3) he subpoenaed the State's investigator who interviewed the victim, who testified at trial in the State's rebuttal, (4) he sent an independent investigator to speak with the victim, and (5) he personally spoke with the victim about the incident.  Mr. Musselman further explained that on the day of trial, he made a tactical decision to call the victim, and moreover, had the opportunity to examine the victim on both direct and re-direct examination.  Mr. Musselman testified that his trial strategy centered around the fact that the victim would not testify favorably for the State and, thus, made the judgment call to present the victim as a witness in the Petitioner's case in chief.  It is difficult to comprehend how counsel was deficient when he was able to elicit testimony from the victim of an assault that was favorable to Petitioner.

(Ex. 12 at 19-20.)  The post-conviction court credited trial counsel's testimony that his decision to call Anderson was tactical, and concluded his actions were not deficient.  Thus, even were procedural default excused, this claim would be denied.  The state court decision is supported by the record and was neither contrary to nor involved an unreasonable application of federal law,

14

nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. 2254(d). Therefore, this claim does not meet the standard for federal habeas relief.

### B. Failure to Subpoena Alibi Witnesses

Bowers claims his trial counsel was ineffective for failing to subpoena alibi witnesses whom he claims would have testified that Bowers did not leave his cell on the day of the stabbing. (Petition at 37-39.) Trial counsel testified at the post-conviction hearing that he investigated and was prepared to call James Chambers, Nathan King, and William Robinson[8] as defense witnesses and two of them were reluctant to testify on Bowers' behalf. (Ex. 11 at 68-69.) Trial counsel acknowledged that he could have attempted to obtain the witnesses, but he decided to use Anderson's testimony instead at trial.[9] (*Id*. at 70.)

In addressing this claim, the post-conviction court stated:

At the evidentiary hearing in the case at bar, Petitioner contended that the four alibi witnesses he wished to call would present testimony and evidence that Petitioner was in his cell during the incident and was allegedly feeling ill. The Hon. Frederick C. Wright, III decided not to writ the witnesses based upon security reasons and, instead, held a pre-trial conference in which Petitioner proffered the proposed testimony of the witnesses.

Furthermore, Mr. Musselman testified at the evidentiary hearing that both he and his investigator interviewed the alibi witnesses during pre-trial investigation. Mr. Musselman stated that two witnesses indicated that they would not testify and one witness's recollections were consistent with those of Petitioner. Moreover, Mr. Musselman explained that testimony of alibi witnesses would not have been essential as the victim in the instant mater recanted his initial identification of Petitioner as his assailant. According to Mr. Musselman, the victim's recantation and favorable testimony for the Petitioner was a stronger argument to present to the jury. Hence, Mr. Musselman tactically decided not to elicit testimony from the alibi witnesses because that action would have required a continuance of the trial. If the trial were continued, Mr. Musselman stated that he could not be sure

---

[8] The post-conviction court's decision indicates there were four potential inmate alibi witnesses. (Ex. 12 at 18.)
[9] Trial counsel also indicated at the hearing that he consulted with Bowers when making the decision to move forward with trial without the additional witnesses. (Ex. 11 at 69.)

15

> of the victim's favorable testimony for the defense at a later date. Thus, Mr. Musselman decided to go forward with the trial. Indeed, the victim testified that his initial statement was incorrect in its identification of Petitioner as the assailant. Mr. Musselman's decision to go forward with the trial under these circumstances cannot be construed as deficient under *Strickland*.

(Ex. 12 at 18-19.)

The decisions of counsel are always subject to being second-guessed with the benefit of hindsight; however, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 689. Having reviewed the record in light of the deferential standard of review applicable to 28 U.S.C. § 2254 proceedings, the court concludes that the state post-conviction court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts.

### C. Failing to Strike a Juror

Bowers asserts trial counsel provided ineffective assistance by failing to strike a juror who had worked as a correctional officer. (Petition at 40.) The state post-conviction court rejected the claim, stating:

> At the evidentiary hearing in the present matter, [defense counsel] Mr. Musselman testified that his decision not to strike Juror 48 from the jury panel was a tactical decision. He stated that all jurors received a standard voir dire and did not recall Juror 48 as extraordinary. Moreover, Mr. Musselman explained that having a correctional officer on a jury could be important in informing the panel as to the culture in a correctional institution.
>
> Thus, Mr. Musselman's action was intentional, in that it was done purposely for a known objective. It was reasonable for trial counsel to have believed that the action would produce the desired objective. During the evidentiary hearing, Mr. Musselman's testimony showed that there was a reasonable basis for his belief. Finally, the Petitioner has failed to adduce any evidence that Mr. Musselman's decision as to this juror constituted a deficient act under *Strickland*.

(Ex. 12 at 16.) The post-conviction court thus concluded trial counsel had sound tactical reasons for his action, a determination that is supported by the record. (Ex. 11 at 75-76, 79-80.) The post-conviction court's determination that counsel's actions were not constitutionally deficient is entitled to deference and will not be disturbed.

### D. Cumulative Error

Insofar as Bowers asserts that the cumulative effect of his trial counsel's alleged errors amounts to constitutionally deficient representation, this claim is factually and legally without merit. In the Fourth Circuit, the cumulative error doctrine is not generally recognized where individual errors are not found to be constitutional errors because "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 852 n.9 (4th Cir. 1998); *see also Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997); *Higgs v. United States*, 711 F. Supp. 2d 479, 551-52 (D. Md. 2010) (in the context of collateral review, relief based on the cumulative effect of errors is available only where individual constitutional errors are found).

None of the claims presented here demonstrates the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The cumulative error claim fails as a matter of fact and of law.

### CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Bowers has failed to make a substantial showing he was denied a constitutional right, and this court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a certificate of appealability shall not issue.

## CONCLUSION

For the foregoing reasons, the court concludes the petition provides no grounds for habeas corpus relief. A separate order follows denying the petition and declining to issue a certificate of appealability.

February 27, 2014　　　　　　　　　　　　　　　　　　　／s／
Date　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge